UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| DWANETTE MARIE ARMELIN | * | CIVIL ACTION NO. 10-1277 |
| VERSUS | * | JUDGE HAIK |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Dwanette Marie Armelin, born September 30, 1972, filed applications for disability insurance benefits and supplemental security income on November 12, 2008, alleging disability as of September 21, 2007, due to a right shoulder condition with a surgery recommendation, and neck, right knee, and lower back pain.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the

Commissioner's decision comports with all relevant legal standards.  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Iberia Medical Center dated August 23, 2007**. Claimant reported right shoulder pain after lifting shelves at work. (Tr. 169).  She rated her pain as 8/10, and had taken Aleve and applied heating pads for two weeks with no change.  She was prescribed an arm sling, Flexeril and Ultracet. (Tr. 175).

**(2) Records from LSU-University Medical Center dated September 25, 2007 to April 22, 2008**.  Claimant complained of right shoulder pain and low back pain radiating down to the leg.  (Tr. 179-89).  Right shoulder x-rays showed minimal AC joint separation.  (Tr. 178).  Lumbar x-rays showed scoliosis and straightening of the normal curvature. (Tr. 185).  Hip x-rays were normal.  (Tr. 186).

**(3) Records from Thomas Landry & Associates dated October 29, 2007 to May 28, 2008**.  Claimant received physical therapy for her neck and shoulder. (Tr. 195-244).

**(4) Records from Acadiana Orthopedic Group dated May 29, 2008**. Claimant complained of constant, pulling, aching pressure to her neck extending into her shoulders. (Tr. 193). She reported being unable to lift her right arm because of pain and weakness. Additionally, she said that she had intermittent low back pain extending to her right knee and numbness going from her low back to right thigh. She had stopped taking Toradol because of pending surgery. (Tr. 246).

On examination, claimant walked with an obvious antalgic gait. She had full range of motion of the head and neck, and had no cervical muscle spasm. Reflexes were +2 and symmetrical, and Tinel signs were negative.

Dr. Stanley Foster noted that claimant either had decreased strength in the entire arm "or puts forth very little effort in biceps, triceps, wrist entensor and flexor strength." On examination of the lumbar spine, she complained and grimaced to severe pain with any palpation. Knee and ankle jerks were +2 and symmetrical. She had weakness in the dorsiflexors of the foot and could not stand on her right toes. Sensation was decreased over the right thigh.

X-rays showed a grade I AC separation on the right.

Dr. Foster's impression was neck and low back pain, and adhesive capsulitis of the right shoulder. (Tr. 247). He recommended aggressive physical therapy.

He opined that claimant had sustained probably a minimal AC separation but had adhesive capsulitis. The cervical spine showed normal degenerative changes. He did not believe that she was at maximum medical improvement, and did not think that she could return to work.

**(5) Records from Dauterive Hospital dated August 31, 2007 to October 2, 2008**. Claimant complained of neck, right shoulder, and back pain. (Tr. 256, 261). X-rays showed spondylosis in the mid to lower cervical spine with no evidence of instability. (Tr. 261). An MRI showed minimal AC joint separation, with a very small amount of edema. (Tr. 260).

A cervical spine MRI showed multilevel spondylosis with mild central canal stenosis at C4-C5. (Tr. 258). X-rays of the thoracic spine showed corrected thoracic scoliosis. (Tr. 256).

**(6) Records from Dr. Theodore Knatt dated October 24, 2007 to October 3, 2008**. On January 18, 2008, claimant had tenderness over the rotator cuff, AC joint, and cervical spine. (Tr. 280). She was neurovascularly intact. Sensation was intact to light touch. She had positive Tinel's, Phalen's, and medial nerve compression at the wrist.

An MRI showed cervical spondylosis with stenosis and some disc desiccation. The right shoulder MRI revealed evidence of AC joint impingement

and evidence of a focal rotator cuff tear. Claimant had weakness 4/5 of the right upper extremity and all muscle groups compared to the left side.

Dr. Knatt's impression was cervical spondylosis, right cubital tunnel syndrome, and right carpal tunnel syndrome. He recommended that claimant continue physical therapy.

NCS/EMG testing showed insufficient evidence to diagnose a cervical radiculopathy secondary to poor activation. (Tr. 281). Claimant had no evidence of a peripheral neuropathy.

On October 3, 2008, claimant presented with low back pain radiating to the right neck and shoulder. (Tr. 274). Neurovascularly, she was intact. Muscular strength on back exam was 3/5. Right shoulder examination showed a 2+ radial pulse with distal sensation intact to light touch. (Tr. 275). Her shoulder strength ranged from 2/5 to 3/5.

Dr. Knatt's assessment was low back and right shoulder pain, cervical spondylosis, right shoulder impingement syndrome, and right subacromial bursitis. He stated that claimant should decrease overhead activities. He recommended surgery if conservative treatment failed.

**(7) Consultative Examination by Dr. Ken Nguyen dated January 24, 2009**. Claimant complained of right shoulder, lower back, right knee, and neck

problems. (Tr. 287). Her medications included Aleve and Motrin. She reported that she could not do much housework due to shoulder pain. She was able to dress, but mainly used her left arm.

On examination, claimant had no muscle asymmetry, atrophy, or involuntary movements. (Tr. 288). She had normal gait, was able to rise from a sitting position without assistance, stand on her tiptoes, heels, and tandem walk without problems. She was able to bend and squat without difficulty.

Grip strength was 5/5. Claimant had no edema, cyanosis, or erythema of the extremities. She had good tone and motor strength of 3/5 in the right leg. Sensory and reflex exams were normal.

Dr. Nguyen's diagnoses were right shoulder injury with AC joint separation and right leg weakness. He opined that claimant could not sit, walk, and/or stand for a full workday, or lift/carry objects without limitations. She could hold a conversation, respond appropriately to questions, and carry out as well as remember instructions. She could ambulate with assistance of a single prong cane.

**(8) Physical Residual Functional Capacity ("RFC") Assessment dated February 11, 2009**. Dr. Fred Ruiz found that claimant could lift/carry 10 pounds occasionally and less than 10 pounds frequently. (Tr. 292). She could stand/walk at least two hours in an eight-hour workday, and required a hand-held assistive

device for ambulation. She could sit about six hours in an eight-hour workday. She had limited push/pull ability in the upper extremities.

Claimant could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. (Tr. 293). She could never climb ladders/ropes/scaffolds or crawl. She had to avoid even moderate exposure to hazards, such as machinery and heights. (Tr. 295).

**(9) Records from University Medical Center dated December 14, 2008 to December 15, 2009**. On November 13, 2009, claimant reported low back pain, her right leg giving out, and right shoulder pain. (Tr. 307). X-rays showed mild levoscoliosis. (Tr. 311). Right shoulder x-rays showed no fractures. (Tr. 312).

Claimant complained of lower back and right leg pain on December 15, 2009. (Tr. 302-06). An MRI of the lumbar spine showed no disk herniations and mild levoscoliosis and kyphosis at the thoracolumbar junction. (Tr. 306). She was prescribed Voltaren or Aleve for pain. (Tr. 305).

**(10) Report from Dr. Knatt dated April 17, 2009**. Claimant complained of right shoulder, right hip and back pain radiating into the right lower extremity. (Tr. 325). Right shoulder examination showed limited range of motion and tenderness over the AC joint and rotator cuff insertion. Her right hip was normal,

with full range of motion.  Examination of the lumbar spine showed positive Faber's, positive straight leg raise, and tenderness over the sacroiliac joints and over the spine.

Dr. Knatt's assessment was right shoulder contracture, right shoulder tendinitis, segmental dysfunction of the right AC joint, right shoulder pain, and right greater trochanteric bursitis.  He recommended a right shoulder arthroscope with synovectomy, bursectomy, thermal capsulorrhaphy, chondroplasty, Bankart and SLAP lesion repair, and rotator cuff repair.  Claimant also received injections in the right greater trochanteric bursa.  She was prescribed Relafen.

**(11) Report from Dr. Foster dated May 19, 2009**.  Dr. Foster opined that claimant did not need right shoulder arthroscopy, as she had a normal MRI, other than a small AC joint separation.  (Tr. 324).  He believed that she had capsulitis of the right shoulder, which should be treated conservatively with aggressive home exercise and/or a supervised physical therapy program.

As for claimant's cervical spine, Dr. Foster opined that it was normal, other than some mild degenerative spondylosis.  He did not have a reason for claimant's weakness in her lower extremity.  His diagnosis remained adhesive capsulitis of the right shoulder and foot drop or weakness in the lower extremity of unknown origin.

    **(12) Claimant's Administrative Hearing Testimony**. At the hearing on February 11, 2010, claimant was 37 years old. (Tr. 34). She testified that she was 5 feet 2 inches tall, and weighed 123 pounds. She had three children, ages 15, 14, and 9. (Tr. 35).

    Claimant testified that she had completed high school. (Tr. 39). She had vocational training as a CNA and a medical secretary. She had last worked in September, 2007 at Walgreen's as a beauty advisor in the cosmetics department. (Tr. 39-40). She had also worked as a CNA for three and a half years and as a safety secretary. (Tr. 40).

    Regarding complaints, claimant testified that she had right shoulder pain and tightening down her arm. (Tr. 36-37). She also had neck stiffness and pain when she tried to move her arm. (Tr. 37). Additionally, she complained of lower back tightness and right hip pain radiating to her knee, and knee swelling with occasional ankle numbness. She testified that she was taking two medications, from which she had side effects including dizziness, sleepiness, forgetfulness, and anxiousness. (Tr. 35-36).

    As to limitations, claimant testified that her husband had to help her get dressed. (Tr. 38). She said that she could stand and shower for a minute or two. She reported that she could not do any chores or cooking.

Claimant testified that she could take six steps, then had to catch her balance. (Tr. 41). She stated that she could not lift a gallon of milk because it hurt her shoulders. She could sit for 10 to 20 minutes with pain.

Regarding activities, claimant testified that she watched over her children, took naps, and went on errands with her mother. (Tr. 38). She had a driver's license, but rarely drove. (Tr. 35).

**(13) Administrative Hearing Testimony of William M. Stampley, Jr., Vocational Expert ("VE")**. Mr. Stampley classified claimant's past work as a cosmetics demonstrator as light and semi-skilled, a medical assistant as light and skilled, a cashier or checker as light and semi-skilled, a nurse assistant as medium and semi-skilled, and a secretary as sedentary and skilled. (Tr. 45). The ALJ posed a hypothetical in which he asked the VE to assume a claimant of the same age, education, and work experience; who was limited to sedentary work, defined as lifting up to 10 pounds occasionally, working for two hours out of eight, and sitting for six hours out of eight, with normal breaks, no overhead reaching and only occasional handling and fingering with the right dominant extremity. (Tr. 45-46). In response, Mr. Stampley testified that she could not do her past work, but could work in the sedentary positions of taxicab starter or dispatcher, of which there were 1,126 jobs statewide and 81,827 nationally; telephone solicitor, of

which there were 2,647 positions statewide and 321,707 nationally, and information clerk, of which there were 2,471 jobs statewide and 184,917 nationally. (Tr. 46).

When claimant's attorney asked whether those jobs would exist if claimant had the inability to concentrate due to pain distraction and medication side effects necessitating frequent naps, the VE testified that they would not. (Tr. 46-47).

**(14) The ALJ's Findings are Entitled to Deference**. Claimant argues that: (1) the ALJ erred in failing to find her disabled and entitled to benefits; (2) alternatively, the ALJ erred in not finding that she was disabled for a time and entitled to a closed period of benefits, and (3) the ALJ erred in finding that her testimony and complaints of pain were not credible.

As to the first argument, claimant asserts that there is no concrete medical evidence that she could do any light or even sedentary work. She alleges that the medical evidence, combined with her testimony, clearly establish that she is severely limited in her activities and is disabled.

The ALJ found that the objective evidence failed to support her subjective complaints of total inability to perform substantial gainful activity. (Tr. 15). He generally concurred with the conclusion of the state agency medical consultant,

Dr. Ruiz, who opined that claimant could perform a modified range of sedentary work.

Dr. Ruiz found that claimant could lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk at least two hours in an eight-hour workday, with a hand-held assistive device for ambulation; sit about six hours in an eight-hour workday; had limited push/pull ability in the upper extremities; occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; never climb ladders/ropes/scaffolds or crawl, and had to avoid even moderate exposure to hazards, such as machinery and heights. (Tr. 292-95). He based his opinion on the report of the examining consultative physician, Dr. Nguyen, who observed that claimant had normal gait, was able to rise from a sitting position without assistance, stand on her tiptoes, heels, and tandem walk without problems, and was able to bend and squat without difficulty. (Tr. 288). As the opinion of the ALJ is supported by the medical evidence, it is entitled to deference.

Claimant also asserts that, based on the testimony of the vocational expert, there are no jobs that she could perform. The ALJ posed a hypothetical in which he asked the VE to assume a claimant of the same age, education, and work experience; who was limited to sedentary work, with limitations as lifting up to 10 pounds occasionally, working for two hours out of eight, and sitting for six hours

out of eight, with normal breaks, and no overhead reaching and only occasional handling and fingering with the right dominant extremity. (Tr. 45-46). He rejected the additional limitations suggested by claimant's attorney, including inability to concentrate due to pain distraction and medication side effects necessitating frequent naps. (Tr. 46-47). It is well established that the ALJ is not bound by VE testimony which is based on evidentiary assumptions ultimately rejected by the ALJ. *See Owens v. Heckler,* 770 F.2d 1276, 1282 (5th Cir.1985); *Falls v. Apfel*, 2000 WL 329233, *7 (E.D. La.2000). As the ALJ's hypotheticals to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant or her representative had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Next, claimant asserts that the ALJ erred in assessing her credibility. Specifically, she asserts that the ALJ erred in disregarding the statements by her treating physician, Dr. Knatt, regarding her disabling right shoulder injury and need for surgery.

The ALJ concluded that while the evidence showed that claimant had some limitation of her right upper extremity and weakness of her right leg, there was no

13

reason that she would not be capable of performing a modified range of sedentary work. (Tr. 15). He noted that her physical limitations that she described at the hearing appeared to be self-imposed rather than as a result of her impairments. This is supported by the opinion of Dr. Stanley Foster, who found that claimant either had decreased strength in the entire arm "or puts forth very little effort in biceps, triceps, wrist extensor and flexor strength." (Tr. 246).

Additionally, while claimant complained of low back pain and her right leg giving way, Dr. Nguyen observed that she had normal gait, was able to rise from a sitting position without assistance, stand on her tiptoes, heels, and tandem walk without problems, and was able to bend and squat without difficulty. (Tr. 288). Further, he found that her grip strength was 5/5, with no edema, cyanosis, or erythema of the extremities and normal sensory and reflex exams.

Moreover, Dr. Foster opined that claimant's cervical spine was normal, other than some mild degenerative spondylosis. (Tr. 324). He did not have a reason for claimant's weakness in her lower extremity. His diagnosis remained adhesive capsulitis of the right shoulder and foot drop or weakness in the lower extremity of unknown origin.

The ALJ determined that claimant's pain was not disabling based the objective evidence.  Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence.  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Carrier v. Sullivan,* 944 F.2d 243, 247 (5th Cir.1991).  It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. *See Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir.1991); *James v. Bowen,* 793 F.2d 702, 706 (5th Cir.1986).

While the opinions of Drs. Knatt and Foster are conflicting, it was within the ALJ's discretion to rely on Dr. Foster's finding that claimant's condition was not severe and did not require surgery.  As the ALJ's determination as to pain is supported by the evidence, it is entitled to great deference.  *Id*; *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Alternatively, claimant argues that the ALJ erred in failing to find that she was entitled to a closed period of disability benefits.  However, claimant has failed to identify this closed period.  In any event, the undersigned finds that claimant was not disabled at any time relevant to this application.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed August 8, 2011, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

17